```
           UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF NEW HAMPSHIRE
```

**Jeffrey Bradley**

    **v.**                                    Civil No. 12-cv-127-PB
                                            Opinion No. 2014 DNH 041
**Wells Fargo Bank, N.A., et al.**


                    **MEMORANDUM AND ORDER**

    Jeffrey Bradley lost his home to foreclosure.  He challenges the legality of the foreclosure proceedings and his subsequent eviction.  I previously dismissed his claims against the original mortgage lender, the initial assignee of the note and mortgage, and one of the entities involved in servicing his loan.  The remaining two defendants, Wells Fargo as Trustee for a Pooling and Service Agreement ("PSA Trustee"), the foreclosing mortgagee, and Ocwen Loan Servicing, LLC, the loan servicer at the time of foreclosure, now move for partial summary judgment against Bradley.  PSA Trustee also seeks summary judgment on its counterclaim for a deficiency judgment.


                    **I.   BACKGROUND**[1]

**A.   The Mortgage Loan**

    On November 5, 2004, Bradley obtained a loan of $143,500

---

[1] The previous order granting dismissal provides a detailed factual background.  Bradley v. Wells Fargo Bank, N.A., 2013 DNH 173, 2-6 (Doc. No. 76).  Here I focus on the facts most pertinent to Bradley's remaining claims.

from Ameriquest Mortgage Company secured by a mortgage on his home in Epping, New Hampshire.  The note and mortgage provide that a failure to make monthly payments on the loan constitutes a default.  The mortgage includes an acceleration clause and the right to invoke the statutory power of sale in the event of default, with the lender "entitled to collect all expenses" incurred in the sale, including fees for services performed in connection with the default.  The note states that any notice given to Bradley concerning the loan "will be given by delivering it or by mailing it by first class mail to [Bradley] at the [property secured by the loan] or at a different address if [Bradley] give[s] the Note Holder a notice of [his] different address."  This provision applies unless a different form of notice is required under applicable law.  Doc. Nos. 77-3, 77-4.

**B.  Assignments**

On November 12, 2004, Ameriquest assigned "all beneficial interest" in the mortgage via a so-called "assignment in blank," with "[t]he critical lines that should contain the name and address of the assignee . . . blank, but the notarization . . . already completed."  Doc. Nos. 78-1, 80-1.  The document was notarized in Ameriquest's home state of California.  At an unknown later point, the assignment in blank was filled in with Wells Fargo Bank, N.A. as Trustee ("Wells Fargo Trust") as the

assignee. Wells Fargo Trust subsequently recorded the assignment in Rockingham County, New Hampshire on April 6, 2006. On December 23, 2010, Wells Fargo Trust assigned the mortgage to PSA Trustee. This second assignment was recorded on February 16, 2011. Doc. No. 77-6. The "signatures" on this document are in the form of initials, not full names.

C.  **Performance, Foreclosure, and Post-foreclosure Proceedings**

Bradley stopped making payments on his loan in the fall of 2005 because "the defendants refused to accept" his payments. Doc. Nos. 79, 80-2. On October 16, 2006, Bradley attempted to refinance his loan, granting a release to his loan servicers and the note and mortgage holder to provide any information about his account to Complete Mortgage Company. Bradley's plans to refinance were thwarted when HomEq, the company servicing his loan, "either would not or could not give [Complete Mortgage] the pay-off amount." Doc. No. 79.

In 2011, PSA Trustee accelerated Bradley's loan obligations and exercised its statutory power of sale. Doc. No. 77-2. A foreclosure sale was initially scheduled for March 9, 2011, then twice postponed, first to April 6 and then to April 27. On February 8, 2011, the bank sent Bradley a letter via certified mail to his home address notifying him of the initial foreclosure date. Doc. Nos. 77-2, 83-5. The letter included a

3

copy of the Notice of Sale and offered Bradley several methods to request reinstatement or payoff of the loan. Postponement letters were also sent to Bradley at the same address on March 8 and April 5, 2011. Doc. Nos. 77-2, 83-6. Bradley never actually received any of these letters and claims that he had no prior notice of the sale.[2]

At the foreclosure sale, which occurred on April 27, 2011, PSA Trustee – the foreclosing party - purchased Bradley's home for $175,000. Doc. No. 83-7. The foreclosure deed is dated May 18, 2011, but it was not recorded until July 20, 2011. On May 1 and May 14, PSA Trustee and Ocwen, through hired agents, entered the property, locked Bradley out of his home by placing a padlock on his door, and destroyed his possessions, including many irreplaceable items of sentimental value. On October 14, 2011, Ocwen, acting on behalf of PSA Trustee, sold the property to an unrelated third party for $95,099.00. In 2006, Bradley's property was determined to have an appraised value of $285,000. Doc. No. 79.

---

[2] Bradley alleges that he was often absent from his home caring for his elderly parents during the period in question. He was also in the process of separating from his wife, who left the home on or about May 1, 2011.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is considered genuine if the evidence allows a reasonable jury to resolve the point in favor of the nonmoving party, and a fact is considered material if it "is one 'that might affect the outcome of the suit under the governing law.'"  United States v. One Parcel of Real Prop. with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, I examine the evidence in the light most favorable to the nonmoving party.  Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

The party moving for summary judgment bears the initial burden of identifying the portions of the record it believes demonstrate an absence of disputed material facts.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In determining what constitutes a material fact, "we safely can ignore 'conclusory allegations, improbable inferences, and unsupported speculation.'"  Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002) (quoting Medina–Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

## III. ANALYSIS

Bradley challenges the lawfulness of the foreclosure sale and argues that PSA Trustee and Ocwen improperly evicted him after the property was sold. I resolve defendants' challenges to these claims and then turn to PSA Trustee's counterclaim.

### A. Foreclosure Claims

Bradley bases his challenges to the foreclosure sale on two distinct grounds. First, he argues that PSA Trustee lacked the power to foreclose because the assignments by which it acquired the mortgage were invalid. Second, he argues that he did not receive sufficient notice of the foreclosure sale.

#### 1. The Assignments

Bradley contends that PSA Trustee never acquired the right to foreclose because the mortgage assignments contain flaws that make them unenforceable. Defendants respond by arguing that Bradley lacks standing to challenge either assignment because the flaws he points to at most make an assignment voidable at the election of a party to the assignment. I agree with the defendants.

A mortgagor may not challenge an assignment of the mortgage to a third party based on alleged deficiencies that merely make the assignment voidable at the election of a party to the

6

assignment.  Wilson v HSBC Mortg. Servs., Inc., No. 13-1298, 2014 WL 563457, at *5-6 (1st Cir. 2014) (Massachusetts law); Galvin v. EMC Mortg. Corp., No. 12-cv-320-JL, 2013 WL 1386614, at *9 (D.N.H. Apr. 4, 2013) (New Hampshire law).  In this case, Bradley claims that the assignments are invalid because:  (1) the first assignment does not provide enough information about the trust that benefitted from the assignment; (2) the first assignment was executed in blank and improperly notarized; (3) the second assignment was signed by both parties with initials rather than full names; and (4) the second assignment involved a Pooling and Service Agreement that, by its own terms, could no longer accept mortgages.  At most, these alleged deficiencies make the assignments voidable rather than void.  See Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 354 (1st Cir. 2013) ("claims that merely assert procedural infirmities in the assignment of a mortgage, such as a failure to abide by the terms of a governing trust agreement, are barred for lack of standing.").  See also Calef v. Citibank, N.A., 2013 DNH 023, 11 n.4 (violations of a Pooling and Service Agreement render assignment voidable).  Because Bradley was not a party to either assignment, he lacks standing to challenge the foreclosure based on any of the  alleged deficiencies.

2. Notice

Bradley next argues that the foreclosure sale was improper because the defendants failed to give him sufficient notice of the foreclosure sale. His principal claim is that the notice was defective because he did not receive actual notice. In the alternative, he argues that the defendants did not give him sufficient notice when the foreclosure sale was twice postponed, even if actual notice is not required, because he was not notified of the postponement by certified or registered mail.

New Hampshire provides strict procedural guidelines regarding the timing and content of notice for a non-judicial foreclosure sale. The statute requires that the foreclosing party send notice to the mortgagor's last known address by registered or certified mail at least twenty-five days before the sale. N.H. Rev. Stat. Ann. § 479:25. It does not, however, require that the mortgagor receive actual notice. Dugan v. Manchester Fed. Sav. & Loan Ass'n, 92 N.H. 44, 23 A.2d 873, 875 (1942) ("The statute does not provide that proof receipt of notice sent by registered mail is a prerequisite to a right of foreclosure.").

PSA Trustee and Ocwen have submitted evidence that on February 8, 2011, they sent a certified letter to Bradley's home notifying him of the proposed foreclosure sale. Bradley does

8

not contend that he asked either defendant to send correspondence to him at any other address, as he could have done pursuant to his loan agreement. Accordingly, defendants fulfilled their statutory obligation to notify him of the foreclosure sale even though Bradley never received actual notice.

Bradley alternatively claims that defendants are not entitled to summary judgment on the foreclosure claims because they did not notify him by certified or registered mail when the foreclosure sale was postponed. In Armille v. Lovett, 100 N.H. 203, 206 (1956), the New Hampshire Supreme Court concluded that when a properly noticed and advertised foreclosure sale is postponed to a definite hour and day, "no new notice or advertisement is required and it is sufficient if the date and time of the postponed sale are either announced at the latest proposed sale of which due notice has been given or stated in a notice of adjournment posted on the premises to be foreclosed." Defendants have presented evidence that notices of postponement were mailed to Bradley, but they do not claim that they sent the notices by certified or registered mail, as is required when a foreclosure sale is initially scheduled. Nor do they contend that they satisfied their duty to notify Bradley of the postponements by announcing or posting the new dates and times

for the sale.  Accordingly, I deny defendants' motion for summary judgment with respect to Bradley's foreclosure claims.

**B.    Eviction Claims**

Bradley presents several legal arguments to support his contention that defendants are liable for damages resulting from his eviction even if the foreclosure sale was properly conducted.  Defendants do not challenge Bradley's primary claim that they are liable because they failed to comply with the notice to quit process required by N.H. Rev. Stat. Ann. § 540:12.  See, e.g., Greelish v. Wood, 154 N.H. 521, 528 (2006) (recognizing a cause of action for damages for a failure to comply with the notice to quit process).  Accordingly, I only consider Bradley's alternative theories of liability.

1.    Trespass

Bradley argues that defendants are liable for trespass because they had no right to enter his property following the foreclosure sale until the "deed was recorded, and all other necessary legal process consummated."  Doc. No. 38.  I disagree.

Bradley bases his argument on N.H. Rev. Stat. Ann. § 479:26, which provides that a purchaser at a foreclosure sale does not acquire title to the foreclosed premises until the foreclosure deed is recorded.  The problem with this argument is that it mistakenly assumes that title remains with the mortgagor

10

in foreclosure until it passes to the purchaser.  The New Hampshire Supreme Court has determined, however, that a mortgagor in foreclosure loses both equitable and legal title as soon as the foreclosure sale is completed, regardless of when the foreclosure deed is recorded.  Barrows v. Boles, 141 N.H. 382, 393 (1996).  Because Bradley lost title to the property immediately after the foreclosure sale, he became a tenant at sufferance, and New Hampshire law has long recognized that a tenant at sufferance may not maintain a trespass claim against his landlord.  Greelish, 154 N.H. at 524; Weeks v. Sly, 61 N.H. 89 (1881).  Thus, if Bradley has a claim, it must be based on N.H. Rev. Stat. Ann. § 540:12 rather than the common law of trespass.

    2.    Conversion

Bradley claims that defendants committed the tort of conversion by padlocking the door to his house and destroying his "personal effects, household goods, and sentimental possessions."  Defendants offer no arguments in response, and I thus deny their motion for summary judgment on this claim.

    3.    Infliction of Emotional Distress

Bradley argues that defendants maliciously destroyed his possessions, including irreplaceable items of sentimental value, thereby "intentionally or recklessly caus[ing him] severe

11

emotional distress." A defendant is liable for intentional infliction of emotional distress if he or she, "by extreme and outrageous conduct, intentionally or recklessly cause[d] severe emotional distress to another." Tessier v. Rockefeller, 162 N.H. 324, 341 (2011) (alteration in original) (quoting Morancy v. Morancy, 134 N.H. 493, 496 (1991)). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quoting Mikell v. Sch. Admin. Unit No. 33, 158 N.H. 723, 729 (2009)). Defendants contend that their alleged conduct was not sufficiently extreme or outrageous as a matter of law.

The ordinary activities of a bank foreclosing on a mortgage do not generally meet the "extreme and outrageous" standard. See Beaudette v. Bank of Am., Inc., No. 11-cv-569-JD, 2012 WL 139223, at *2 (D.N.H. Jan. 18, 2012)(citing, among other cases, Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1046 (9th Cir. 2011); Brown v. First Nationwide Mortg., 206 Fed. Appx. 436, 443 (6th Cir. 2006)). Bradley's claim, however, centers on a post-foreclosure self-help eviction and the subsequent destruction of his possessions. Courts have found that changing a tenant at sufferance's locks post-foreclosure after "reasonably attempting to discern occupancy" is

insufficient to state a claim. See, e.g., Vakili v. Wells Fargo Home Mortg. Inc., No. CV-212-104, 2013 WL 3868170, at *6 (S.D. Ga. July 24, 2013). Moreover, this court has found a claim to be insufficient where, after repeated warnings, the owner of a camper locked out his or her tenants and destroyed some items they left behind after the tenants failed to make payments required by their contract. Foley v. Town of Lee, 2012 DNH 081, 31-32. Here, there is no evidence that defendants complied with the statutory notice to quit process or otherwise made a reasonable attempt to determine occupancy before they allegedly locked Bradley out and destroyed all of his possessions, including irreplaceable sentimental items. Although I acknowledge that the "extreme and outrageous" standard establishes a high bar, I consider this to be a close case in which a reasonable jury could potentially find PSA Trustee's and Ocwen's alleged conduct to be extreme and outrageous. Using self-help to destroy someone's possessions without prior actual notice and despite the availability of legal alternatives could be viewed as behavior utterly intolerable in a civilized society. I thus deny defendants' motion for summary judgment on the intentional infliction of emotional distress claim.

Bradley also attempts to state a claim for negligent infliction of emotional distress. To plead a viable claim on

this theory, Bradley must allege (1) causal negligence by PSA Trustee and Ocwen; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms. See Tessier, 162 N.H. at 342.  Bradley has provided no evidence of objective physical symptoms accompanying his alleged mental and emotional distress.  I thus grant defendants' motion for summary judgment on Bradley's negligent infliction of emotional distress claim.[3]

### 4. Consumer Protection Act

Bradley argues that defendants are liable under the New Hampshire Consumer Protection Act ("CPA") for failing to comply with lawful eviction procedures under the state's landlord-tenant law.  See N.H. Rev. Stat. Ann. § 358-A:10.  New

---

[3] Bradley also alleges that defendants' failure to provide a payoff amount when requested by a third party lender "negligently interfered with the plaintiff's prospective contract with said lender."  As defendants' correctly argue, New Hampshire does not recognize a claim for negligent interference with contract.  Rand v. Town of Exeter, 2013 DNH 133, 28 n.8 (citing Ferrero v. Coutts, 134 N.H. 292, 295 (1991)). Furthermore, the parties do not cite, and I am not aware of, any authority recognizing a New Hampshire tort for negligent interference with advantageous business relations.  See id. Bradley also alleges that defendants "intentionally and improperly interfered with the contract."  Doc. No. 78-1.  As defendants note, however, New Hampshire's three year statute of limitations bars this claim.  See N.H. Rev. Stat. Ann. § 508:4(I).  The alleged failure to provide a payoff amount occurred in 2006 or shortly thereafter – well over three years prior to Bradley's initiation of this suit.

14

Hampshire's statutory scheme governing landlord-tenant relationships expressly provides for damages pursuant to the CPA. Id. § 540-A. Defendants argue, however, that section 540-A is inapplicable on these facts and thus the CPA does not apply.

Section 540-A:4(IX) of the New Hampshire Revised Statutes states that "[a]ny landlord or tenant who violates [any provision of] RSA 540-A . . . shall be subject to" the civil remedies set forth in Section 358-A:10, the CPA's private enforcement provision. The statute, however, applies only to "landlords," defined as "an owner, lessor or agent thereof who rents or leases residential premises . . . to another person," and "tenants," defined as "a person to whom a landlord rents or leases residential premises." Evans v. J Four Realty, LLC, 164 N.H. 570, 572 (2013) (citing N.H. Rev. Stat. Ann. § 540-A:1). In Evans, the New Hampshire Supreme Court held that section 540-A only applies following "the termination of a conventional leasehold relationship." Id. at 576 (citing Hill v. Dombrowolski, 125 N.H. 572, 576 (1984) (holding that section 540-A "applies only to tenancies that have resulted from lease or rental agreements")). Defendants have shown that no such relationship existed between themselves and Bradley.

15

Bradley nevertheless claims that evicting him and destroying his property violates the CPA, adding that "even if the defendants are correct in [stating] that RSA 540A [sic] does not apply, defendants were not entitled to use self help." Bradley has failed to explain his conclusory assertion that a mortgagee can be liable under the CPA for a wrongful eviction even though it is not subject to the CPA pursuant to section 540-A. Accordingly, I grant defendant's motion for summary judgment on the CPA claim.

C. **The Counterclaim**

PSA Trustee also seeks a deficiency judgment against Bradley for his failure to pay the amount due on the loan. Doc. No. 58. PSA Trustee argues that the foreclosure price was fair and reasonable under the circumstances and that it therefore can recover the difference between the proceeds from the foreclosure sale and the balance due on the note, as well as accrued interest and other damages and expenses.

PSA Trustee bases its request for a deficiency judgment on an affidavit that purports to show that Bradley owed $258,223.60 when the foreclosure occurred. Bradley challenges the affidavit and, in addition, claims that he cannot be held liable for all of the late charges and interest payments included in the proposed deficiency judgment because PSA Trustee and its

16

predecessors unreasonably delayed the foreclosure sale in breach of the duty of good faith and fair dealing.  I deny PSA Trustee's motion for summary judgment on the deficiency counterclaim because I determine that material facts pertaining to the motion remain in genuine dispute.  In denying the motion, I take no position on Bradley's good faith and fair dealing argument.

## IV.  **CONCLUSION**

For the reasons set forth above, I grant defendants' motion for summary judgment (Doc. No. 77) in part and deny it in part. The only claims that remain are:  (1) Bradley's claim that he did not receive proper notice of the foreclosure sale (Count IV); (2) Bradley's claim that defendants failed to comply with the notice to quit process specified in N.H. Rev. Stat. Ann. § 540:12 (Count I); (3) Bradley's claim for conversion (Count III); (4) Bradley's claim for intentional infliction of emotional distress (Count III); and (5) PSA Trustee's counterclaim for a deficiency judgment.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

March 3, 2014

17

```
cc:    Ruth A. Hall, Esq.
       Terrie L. Harman, Esq.
       Christopher J. Fischer, Esq.
       William Philpot, Jr., Esq.
       John S. McNicholas, Esq.
```