# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| JEFFREY BRADLEY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WELLS FARGO BANK, N.A. AS TRUSTEE )<br>POOLING AND SERVICING AGREEMENT )<br>DATED AS OF OCTOBER 1, 2004 ASSET- )<br>BACKED PASS-THROUGH CERTIFICATES )<br>SERIES 2004-MHQ1, et al. )<br>)<br>Defendants. )<br>) | Case No. 1:12-cv-00127 |

## MEMORANDUM OF LAW SUPPORTING DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF ERIC G. MART, PH.D., ABPP

Dated: August 21, 2015

Elizabeth M. Lacombe Bar No. 19921
Duane Morris LLP
100 Pearl Street, Suite 1415
Hartford, CT 06103
Phone (215) 979-1577
Fax (215) 979-1020
Email: emlacombe@duanemorris.com

and

Alexander D. Bono
*Pro Hac Vice*
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
Phone (215) 979-1811
Fax (215) 979-1020
Email: abono@duanemorris.com

***Attorneys for Defendants Wells Fargo Bank N.A. as Trustee Pooling and Servicing Agreement Dated as of October 1, 2004 Asset-Backed Pass-Through Certificate Series 2004-MHQ1 and Ocwen Loan Servicing, LLC***

**TABLE OF CONTENTS**

**Page**

I. FACTUAL BACKGROUND ................................................................................................ 1

    A. Plaintiff's Third Amended Complaint Makes Two Claims. ................................... 1

    B. Dr. Mart's Report Violates Fed. R. Evid. 702 and 703. ......................................... 2

        1. Dr. Mart Admits Under Oath That His Analysis Was Incomplete and Failed to Consider Bradley's Prior Medical Records, Pleadings or Depositions in this Action.. ................................................................. 2

        2. Dr. Mart admits that his Report's Opinion on causation is based on an unsupported assumption that Bradley had no, or no significant, history of mental illness. ................................................................................ 4

        3. Dr. Mart's finding of causation is unconnected to the facts or issues in this case. .................................................................................... 5

II. ARGUMENT .......................................................................................................................... 5

    A. Dr. Mart's Report and Proposed Expert Testimony Violates the Legal Standard for Admissibility of Expert Testimony Under Daubert and Federal Rule of Evidence 702. ............................................................................................... 5

        1. Dr. Mart's Report Lacks a Reliable Methodology ...................................... 7

        2. Dr. Mart's Report Fails the Fit and Relevancy Tests ................................ 10

III. CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

**Federal Cases**

*Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA), LLC*, 752 F.3d 82 (1st Cir. 2014) .................................................................. 6-7, 10

*Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993) ........................................ 1, 5-7, 9-11

*Gen. Elec. Co. v. Joiner,* 522 U.S. 136 (1997) ........................................................................ 7, 10

*Heller v. Shaw Industries, Inc.*, 167 F.3d 146 (3rd Cir. 1999) ........................................................ 7

*In re Zoloft Prods. Liab. Litig.*, 26 F. Supp. 3d 449, 463 (E.D. Pa. 2014) ...................................... 9

*Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) .................................................................... 6

*Miller v. Pfizer*, 196 F. Supp. 2d 1062 (D.Kan. 2002) .................................................................. 9

*Miller v. Pfizer*, 356 F.3d 1326 (10th Cir. 2004) ........................................................................... 9

*Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998) ......................... 6

*United States v. Corey*, 207 F.3d 84 (1st Cir. 2000) ................................................................ 5, 10


**Federal Statutes and Rules of Court**

Fed. R. of Evid. 702 .................................................................................................. 1-2, 5, 7, 10-11

Fed. R. of Evid. 703 .................................................................................................................. 1-2, 11

Defendants Wells Fargo Bank, N.A. as Trustee for the Pooling and Servicing Agreement dated as of October 1, 2004 Asset-Backed Pass-Through Certificates Series 2004-MHQ1 and Ocwen Loan Servicing, LLC ("***Defendants***") submit this memorandum of law supporting this Motion to Exclude the Expert Testimony of Eric G. Mart, Ph.D., ABPP ("***Dr. Mart***").  The Motion should be granted for two reasons:

1. Dr. Mart's proposed testimony, as presented in his expert report dated January 22, 2015, violates *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993) and Federal Rules of Evidence 702 and 703 because it fails to base his causation conclusions on any reliable methodology since Dr. Mart (a) admittedly failed to review and consider Plaintiff Jeffrey Bradley's medical and psychological history; (b) admittedly failed to confirm the self-reported information provided by Plaintiff Jeffrey Bradley through third party sources of information; (c) admittedly relies on inaccurate or incomplete information provided by Plaintiff Jeffrey Bradley; and (d) draws a causation conclusion which is unconnected to the issues in this case; and

2. Dr. Mart's proposed testimony violates *Daubert* and Federal Rule of Evidence 702 because it would not assist the trier of fact since it is based on several assumptions that are unsupported by the record evidence and are unconnected to the facts or issues in this case.

I.   **FACTUAL BACKGROUND**

   A.   **Plaintiff's Third Amended Complaint Makes Two Claims.**

Plaintiff Jeffrey Bradley ("***Bradley***") filed a Third Amended Complaint alleging that after the foreclosure of his home, he was locked out of his home and his personal belongings were destroyed.  Based on the factual allegations in Bradley's Third Amended Complaint, Bradley asserts two claims against Defendants: Count I -  constructive eviction without due process of law; and Count II - conversion and intentional infliction of emotional distress.  *See generally* Docket No. 111.  Paragraphs 49 through 55 concern the alleged padlocking of Bradley's

"Homestead" and the alleged destruction of Bradley's personal belongings.  Bradley specifically claims that Defendants' alleged conduct constitute "extreme and outrageous conduct" and "intentionally or recklessly caused severe emotional distress to the plaintiff."  *See* Docket No. 111 at pg. 10, ¶ 52.

**B.    Dr. Mart's Report Violates Fed. R. Evid. 702 and 703.**

Rarely do experts admit that their reports and conclusions are based on "incomplete, incorrect information"  or that they lack confidence that their conclusions on "causation" are complete. But remarkably, that's exactly what happened here. *See Exhibit A*, Deposition of Dr. Eric G. Mart ("Mart Dep."), at 102:6-13, 103:8-17; 170:21 – 171:23.

***1.    Dr. Mart Admits Under Oath That His Analysis Was Incomplete and Failed to Consider Bradley's Prior Medical Records, Pleadings or Depositions in this Action.***

Dr. Mart admitted *several times* during his deposition on August 5, 2015 that his analysis was incomplete because he failed to review Bradley's prior mental health history.  Mart Dep., at 102:6-13, 103:8-17.  One of Dr. Mart's more significant exchanges with Defendants' counsel in this regard follows:

> Q.    So I want you to look at page 3 of your report, which we marked as D-19, sir.
> A.    Okay.
> Q.    And specifically I'm going to direct your attention to the middle of the page.  It says, "Mr. Bradley reports that in early adolescence," et cetera?
> A.    Okay.
> Q.    Now, that paragraph, based on the information that we looked at in 20 or so exhibits, is at least incomplete, correct?
> A.    Yes.
> Q.    And in many cases, flat our wrong, right?
> A.    That's correct.
> Q.    But that's what you based your assessment on, this incomplete, incorrect information, right?
> A.    Yes.
> Q.    And that information came from Mr. Bradley, correct?
> A.    That's correct.

2

> Q. And you did nothing to look at records to verify the accuracy of the information he was giving you other than giving him a test?
> A. I could not have asked for records that I didn't know existed.
> Q. It appears though the records existed. You just never got them.
> A. That's correct.

Mart Dep., at 170:21 – 171:23. Furthermore, contrary to Dr. Mart's assertions, these records were available to him, as specifically admitted by Bradley's counsel. *See Exhibit B*, E-mail correspondence from Attorney Ruth Hall.

Most notably, Dr. Mart admitted that he was not confident that his conclusion on causation was complete because it failed to take into consideration a number of episodes in Bradley's prior history. Dr. Mart's exchange with Defendants' counsel in this regard follows:

> Q. I'd like you to look at page 6 of your report that's been marked as D-19, specifically the next to the last paragraph.
> A. Yes.
> Q. And it states, "With regard to causation, all of the available information indicates that Mr. Bradley's severe depression and anxiety are directly related to the loss of his home and possessions, and the associated break of his family." What do you mean by "causation"?
> A. That one had a direct influence on the creation of the other.
> Q. The influence, did they cause it?
> A. Yes. I mean, that's what I meant by causality.
> Q. Are you confident that your conclusion on causation is complete?
> A. No.
> Q. It fails to take in consideration a number of episodes in his prior history, correct?
> A. That's correct.
> Q. It fails to take in consideration lots of reports by psychiatrists, correct?
> A. That's correct.
> Q. It fails to take into consideration the years of antidepressants that he was on, correct?
> A. That's correct.
> Q. It fails to take into consideration his unilateral modification of the prescription dosages for those prescription drugs, correct?
> A. That's correct.

Mart Dep., at 172:24 – 174:4.

Remarkably, Dr. Mart also admitted that he did not review the pleadings in the subject litigation and did not review the depositions of other individuals who might have information

3

relevant to his evaluation of Bradley, namely Bradley-s ex-wife and daughter, but acknowledged that the deposition testimony of others might corroborate whether Bradley's story was accurate. Mart Dep., at 59:2-15; 89:19 – 90:25.

> 2. **_Dr. Mart admits that his Report's Opinion on causation is based on an unsupported assumption that Bradley had no, or no significant, history of mental illness_**.

Bradley claims that the alleged padlocking of his "Homestead" and the alleged destruction of his personal belongings caused him severe emotional distress.  *See* Docket No. 111 at pg. 10, ¶ 52.  Dr. Mart's report states that the evaluation techniques used were comprised of a mental status evaluation, a clinical interview of Bradley, an assessment using the Personality Assessment Inventory and an assignment using the Trauma Symptom Inventory-2.  *See Exhibit C*, Dr. Mart Report (Mart Report) at p. 1.

But, Dr. Mart's report fails to evidence any steps taken to corroborate the self-reported information provided by Bradley at the time of the evaluation.  Furthermore, and notwithstanding Bradley's claim to Dr. Mart that he was hospitalized in 2006 for suicidal ideation, Dr. Mart's report fails to evidence any steps taken to obtain and review Bradley's medical and psychological history as part of the evaluation.  Instead, Dr. Mart's report blindly accepts Bradley's uncorroborated recitation of the facts that the alleged padlocking of his "Homestead" and the alleged destruction of his personal belongings caused him severe emotional distress and summarily concludes that "all of the available information indicates that Mr. Bradley's severe depression and anxiety are directly related to the loss of his home and possessions and the associated breakup of his family."   Mart Report at p. 6.

Dr. Mart completely disregarded the significance of Bradley's prior mental history, including his prior hospitalization as a result suicidal ideation which took place years before the events at issue in the subject lawsuit.

> **3.   Dr. Mart's finding of causation is unconnected to the facts or issues in this case.**

Dr. Mart's report summarily concludes that "all of the available information indicates that Mr. Bradley's severe depression and anxiety are directly related to the *loss of his home* and possessions and *the associated breakup of his family*." Mart Report at p. 6. This Court previously found that the foreclosure of the subject premises which resulted from Bradley's non-payment under the terms of his note and mortgage was lawfully conducted and entered summary judgment for Defendants on that issue. *See* Docket No. 99. Bradley's Third Amended Complaint makes no allegation that Defendants' alleged actions caused the breakup of his family. The very language of Dr. Mart's report demonstrates that his evaluation and subsequent analysis were conducted in reliance on facts and associated timeframes that are unrelated to the issues in this case.

**II.   ARGUMENT**

    **A.   Dr. Mart's Report and Proposed Expert Testimony Violates the Legal Standard for Admissibility of Expert Testimony Under *Daubert* and Federal Rule of Evidence 702.**

Rule 702 of the Federal Rules of Evidence specifies that if an expert's opinion "will assist the trier of fact to understand the evidence or to determine a fact in issue", that expert may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *See* Fed. R. Evid. 702. This rule embodies three distinct substantive restrictions on the admission of expert testimony. Expert testimony must: (1) be qualified; (2) be based on reliable and scientifically valid methodology; and (3) "fit" the case. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *United States v. Corey*, 207 F.3d 84, 88 (1st Cir. 2000). The proponent of the expert testimony bears the burden of

establishing admissibility by a preponderance of the evidence. *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA), LLC*, 752 F.3d 82, 96 (1st Cir. 2014).

In *Daubert*, the Supreme Court of the United States established that federal district courts retain a "gatekeeping role" over expert testimony and must "make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999). Consistent with this gatekeeping function, the Supreme Court directed trial courts to ensure that evidence presented by an expert witness is relevant, reliable and helpful to the fact-finder's evaluation of the evidence. *Daubert,* 509 U.S. at 597.

The party offering an expert opinion has the burden of demonstrating that it is admissible. Specifically, "an expert's opinion must be relevant 'not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue.'" *Bricklayers*, 752 F.3d at 91 (citing to *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998)).

Here, Dr. Mart's Report and proposed testimony utterly fails to satisfy *Daubert* and the Federal Rules of Evidence. **First**, Dr. Mart's proposed testimony would not assist the trier of fact since it is based on several assumptions that are unsupported by the record evidence and unconnected to the facts or issues in this case. **Second**, Dr. Mart fails to base his conclusion on reliable methodology because he (a) admittedly failed to review and consider Plaintiff Jeffrey Bradley's medical and psychological history; (b) admittedly failed to confirm the self-reported information provided by Plaintiff Jeffrey Bradley through third party sources of information; (c)

6

admittedly relies on inaccurate or incomplete information provided by Plaintiff Jeffrey Bradley; and (d) draws a causation conclusion which is unconnected to the issues in this.

### 1. *Dr. Mart's Report Lacks a Reliable Methodology*.

As the First Circuit has taught, "a subjective analysis without any methodological constraints does not satisfy the requirements of Daubert." *Bricklayers*, 752 F.3d at 95. An expert cannot rely upon mere subjective belief and speculation. *See Daubert,* 509 U.S. at 590. Speculation or conclusory statements do not suffice to meet the requisite degree of "reliability" required. Simply put, this Court's gatekeeping function requires more than "taking the expert's word for it." *See* Fed. R. Evid. 702 advisory committee's note.

Furthermore, a district court need not admit opinion evidence where there is "too great of an analytical gap between the data and the opinion offered." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). While an expert is not required to "rule out *all* alternative possible causes" of injury, "[o]bvious alternative causes need to be ruled out" and where an expert "offers *no* explanation" for why he or she concluded that the obvious alternative cause "was not the sole cause, that [expert's] methodology is unreliable." *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 156 (3rd Cir. 1999)(internal citations omitted).

Dr. Mart's report specifically states as follows: "With regard to causation, all of the available information indicates that Mr. Bradley's severe depression and anxiety are directly related to the loss of his home and possessions and the associated breakup of his family. *See* Dr. Mart Report at p. 6. But, Dr. Mart bases this conclusion on the subjective data gathered from Bradley during the clinical interview, without regard for the existence of available third party sources which could be used to confirm or deny the accuracy of Bradley's recitation of the facts. Additionally, Dr. Mart's report utterly ignores the existence of Bradley's significant history of psychological issues which include at least one prior hospitalization as a result of suicidal

7

ideation. Having failed to offer any explanation for why he concluded that Bradley's history of mental health issues was not the sole cause for his current mental status, this Court must find that Dr. Mart's methodology is unreliable.

Dr. Mart admitted *several times* during the course of his deposition on August 5, 2015 that his analysis was incomplete as a result of the fact that he failed to review Bradley's prior mental health history. Mart Dep., at 102:6-13, 103:8-17; 170:21 – 171:23. Furthermore, contrary to Dr. Mart's assertions, these records were available to him, as specifically admitted by Bradley's counsel. *See Exhibit B*. Most notably, Dr. Mart admitted that he was not confident that his conclusion on causation was complete because it failed to take into consideration a number of episodes in Bradley's prior history. Mart Dep., at 172:24 – 174:4.

Also, Dr. Mart admitted that he did not review the pleadings in the subject litigation and did not review the depositions of other individuals who might have information relevant to his evaluation of Bradley, namely Bradley-s ex-wife and daughter, but acknowledged that the deposition testimony of others might corroborate whether Bradley's story was accurate. Mart Dep., at 59:2-15; 89:19 – 90:25. This admission surfaced following his concurrence with the statement that a therapist who testifies "that their clients had been traumatized by a defendant's alleged actions or negligence may actually *be acting unethically* if they have not made efforts to corroborate the story, substantiate the existence of the symptoms, or rule out symptom exaggeration, malingering or false imputation." Mart Dep., at 58:7 – 59:7. This statement was taken directly from an article which Dr. Mart had written entitled "Psychotherapist's Testimony and Personal Injury Cases: Coping with the Stealth Evaluation." By his own words, the manner by which his evaluation of Bradley was conducted and his subsequent conclusions of causation

8

were drawn were *unethical* in light of his failure to take steps to corroborate the information provided by Bradley at the time of the evaluation.

Under *Daubert*, this type of expert testimony is inadmissible because it selectively relies on only the facts or data that would support the expert's opinion, while failing to account for or explain potentially contrary sources of information. *In re Zoloft Prods. Liab. Litig.*, 26 F. Supp. 3d 449, 463 (E.D. Pa. 2014) (stating expert's "selective reliance on studies which support her opinion is inconsistent with a valid and scientific methodology"); As the court held in in *Miller v. Pfizer*, an expert witness's testimony is inadmissible on the issue of specific causation where that expert engaged in selective reliance. *Miller v. Pfizer*, 196 F. Supp. 2d 1062 (D.Kan. 2002) Indeed, *Miller* specifically identified concerns that the expert, a doctor, had relied on "pre-selected evidence from interested parties, to the exclusion of reliable evidence that [the deceased] engaged in suicidal thoughts and behavior [previously]." *Id.* at 1086. The court in *Miller* went on to say:

> The Court therefore asked its independent experts whether selective reliance was consistent with generally accepted methodology on this issue. Their response was predictable and well-founded within the bounds of the case law under Daubert: "the exclusion of evidence is not generally accepted practice" because researchers typically evaluate information from relevant sources and consider it when assessing a cause and effect relationship. Stated otherwise, obtaining information from sources that support, refute or are neutral regarding the hypothesis is appropriate to minimize the likelihood of a false conclusion.

*Id.* at 1086-1087. The Tenth Circuit upheld the District Court's decision to exclude the expert's testimony on this basis. *Miller v. Pfizer*, 356 F.3d 1326 (10th Cir. 2004).

Having failed to consider Bradley's mental health history and instead selectively citing only to those facts which support his opinion, Dr. Mart is not giving valid causation testimony; rather, he is only creating the "illusion" of consistency in his findings. *In re Zoloft*, 26 F. Supp. 3d at 463.

## 2. *Dr. Mart's Report Fails the Fit and Relevancy Tests.*

Rule 702 also requires that the expert's testimony "fit" the case by assisting the trier of fact in resolving disputed factual issues. *See  Daubert,* 509 U.S. at 589; *Corey*, 207 F.3d at 88. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Joiner,* 522 U.S. at 146

In order for the expert testimony to properly "fit" under *Daubert*, the testimony must help the trier of fact to "understand the evidence or to determine a fact in issue." *Bricklayers*, 752 F.3d at 91.  Dr. Mart's testimony based on his expert report should be excluded because it utterly fails to assist the trier of fact in resolving a disputed factual issue.

Dr. Mart's report summarily concludes that "all of the available information indicates that Mr. Bradley's severe depression and anxiety are directly related to the *loss of his home* and possessions and *the associated breakup of his family*."   Dr. Mart Report at p. 6.  As shown previously, this Court has held that the foreclosure of the subject premises which resulted from Bradley's non-payment under the terms of his note and mortgage was lawfully conducted and entered summary judgment for Defendants' on that issue. *See* Docket No. 99.  Bradley's Third Amended Complaint makes no allegation that Defendants' alleged actions caused the breakup of his family.  The very language of Dr. Mart's report demonstrates that his evaluation and subsequent analysis were conducted in reliance upon facts and associated timeframes which are unrelated to the issues in this case.

Dr. Mart failed to limit the scope of his evaluation and subsequent analysis to the impact of the events which Bradley claims caused him severe emotional distress, *i.e.*, the alleged padlocking of his "Homestead" and the alleged destruction of his personal belongings.  As such,

the opinion in Dr. Mart's report could not serve to assist the trier of fact with respect to Bradley's claims of intentional infliction of emotional distress.

### III.   CONCLUSION

Defendants respectfully request this Court, pursuant to Federal Rule of Evidence 702 and 703, grant the Motion to Preclude the Expert Testimony of Eric G. Mart, Ph.D., ABPP for two reasons:

1. Dr. Mart's proposed testimony, as presented in his expert report dated January 22, 2015, violates *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993) and Federal Rules of Evidence 702 and 703 because it fails to base his causation conclusions on any reliable methodology since Dr. Mart (a) admittedly failed to review and consider Plaintiff Jeffrey Bradley's medical and psychological history; (b) admitted failed to confirm the self-reported information provided by Plaintiff Jeffrey Bradley through third party sources of information; (c) admitted relies on inaccurate or incomplete information provided by Plaintiff Jeffrey Bradley; and (d) draws a causation conclusion which is unconnected to the issues in this case; and

2. Dr. Mart's proposed testimony violates *Daubert* and Federal Rule of Evidence 702 because it would not assist the trier of fact since it is based on several assumptions that are unsupported by the record evidence and are unconnected to the facts or issues in this case.

August 21, 2015                                    By /s/Elizabeth M. Lacombe
                                                   Elizabeth M. Lacombe Bar No. 19921
                                                   Duane Morris LLP
                                                   100 Pearl Street, Suite 1415
                                                   Hartford, CT 06103
                                                   Phone (215) 979-1577
                                                   Fax (215) 979-1020
                                                   Email: emlacombe@duanemorris.com

                                                   and

11

        Alexander D. Bono
        *Pro Hac Vice*
        Duane Morris LLP
        30 South 17th Street
        Philadelphia, PA 19103
        Phone (215) 979-1811
        Fax (215) 979-1020
        Email: abono@duanemorris.com

***Attorneys for Defendants Wells Fargo Bank N.A. as Trustee Pooling and Servicing Agreement Dated as of October 1, 2004 Asset-Backed Pass-Through Certificate Series 2004-MHQ1 and Ocwen Loan Servicing, LLC***