UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jeffrey Bradley

   v.                                 Case No. 12-cv-127-PB
                                    Opinion No. 2015 DNH 163

Wells Fargo Bank, N.A., et al.

### MEMORANDUM AND ORDER

Jeffrey Bradley sued Wells Fargo Bank and Ocwen Loan Servicing[1] to recover damages he suffered after he lost his home to foreclosure. Bradley alleges that the defendants, after foreclosing on his home, installed a padlock on one of his doors, removed personal property from the home, and threw it into a dumpster that they had placed on the property. He now seeks damages for wrongful self-help eviction, conversion, and intentional infliction of emotional distress under New Hampshire law. The defendants have moved for summary judgment. For the reasons that follow, I deny their motion and conclude that

---

[1] I refer to Wells Fargo and Ocwen collectively as the "defendants" in this Memorandum and Order. Bradley's amended complaint also names Legacy Landscape Company and Mark Murray as defendants. Here, however, only Wells Fargo and Ocwen have moved for summary judgment, and so I use the term "defendants" to refer to these two firms.

Bradley is entitled to a jury trial.

## I.   BACKGROUND

In November 2004, Bradley and his then wife, Teresa Bradley, took out a $143,000 loan secured by a mortgage on their home in Epping, New Hampshire.  The loan and mortgage were assigned to Wells Fargo in its capacity as trustee of a securitized mortgage trust.  In August 2010, Ocwen began servicing the mortgage on Wells Fargo's behalf.[2]  In February 2011, Wells Fargo foreclosed on Bradley's home after Bradley defaulted on the mortgage.  It then purchased the property at a foreclosure sale that it held on April 27, 2011.

After Wells Fargo acquired the property, Ocwen engaged Altisource Solutions, Inc. to provide post-foreclosure services at the home, including inspection, maintenance, and cleaning.[3]

---

[2] Neither side has fully explained the corporate relationship between Wells Fargo and Ocwen, both of which Bradley names as defendants in this action.  Neither defendant, however, argues at summary judgment that they are not liable for the other's conduct.  Thus, I assume for purposes of summary judgment that Wells Fargo and Ocwen would both be liable to Bradley if he prevails on his claims.

[3] Neither side has fully explained the corporate relationship between Altisource and the defendants.  But beyond one conclusory statement that Altisource was their "third-party vendor," Doc. No. 106-1 at 9, the defendants offer no developed

Altisource, in turn, hired Legacy Landscape Company, an outside firm, to inspect the property and determine whether anyone was still residing in the home or whether the property was ready to be cleaned out and secured.  A Legacy employee visited the property on May 2, 2011 to conduct this inspection.

On May 12, 2011, Altisource again hired Legacy to both clean out and secure the property, which entailed "installing a combination lock on an exterior door and ensuring that [the] other doors [were] locked."  Doc. No. 106-1 at 7.  Legacy visited the home on the same day to perform these services. During its visit, it installed a padlock on one of the home's doors and removed some of Bradley's personal property inside the home and disposed of it in a dumpster that had, at some point, been brought to the property.  The padlock appears to have remained unlocked after the visit, however, and other doors into

---

argument that they are not liable for Altisource's conduct. Instead, their briefing makes clear that their arguments turn on their relationship with Legacy, not with Altisource.  See Doc. Nos. 106-1 at 9-10, 12-16, 122 at 3-6.  Moreover, Bradley has pointed to facts suggesting that Altisource may be a subsidiary of the defendants, and the defendants have not sufficiently rebutted Bradley's contention for purposes of their current motion.  See Doc. No. 114-1 at 7-8.  For these reasons, I proceed on the assumption that the defendants make no argument for summary judgment based on any absence of liability for Altisource's conduct.

the home remained unlocked as well.

By August 8, neither of the defendants had received any further contact from Bradley regarding the property. On that day, Legacy visited the property again to finish cleaning out and securing the home. It is undisputed that the defendants never sent Bradley a notice to quit or otherwise invoked the New Hampshire summary eviction procedure after the foreclosure.

During this period, Bradley lived at the home only intermittently. He had moved out in January 2011 after separating from his wife. Between January 2011 and May 12, 2011, he would return to the property at times to retrieve his disc jockey equipment and at other times to spend the night at the home. Otherwise, he stayed at his mother's home during this period. He continued to keep personal property at the home, however, and maintained it as his legal residence and continued to receive mail there. Upon learning of Legacy's visit to the property on May 12, 2011, he consulted the local police, who advised him against returning to the property because it had been foreclosed. For that reason, Bradley did not visit the property again after May 12.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The evidence submitted in support of the motion must be considered in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A material fact "is one 'that might affect the outcome of the suit under the governing law.'"  United States v. One Parcel of Real Prop. with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  If the moving party satisfies this burden, the nonmoving party must then "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted."  Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

### III.  ANALYSIS

Bradley presents three claims: (1) wrongful self-help eviction; (2) conversion; and (3) intentional infliction of emotional distress.  The defendants argue that summary judgment is warranted for all three claims because Bradley improperly seeks to hold them liable for Legacy's alleged misconduct.  They also contend that even if they can be held liable for Legacy's alleged wrongdoing, they are nevertheless entitled to summary judgment because Bradley has failed to produce sufficient evidence in support of his three claims to withstand their summary judgment challenge.  I address these arguments in turn.

### A. Vicarious Liability

The defendants first argue that they cannot be held liable on any of Bradley's claims because Legacy was acting as an independent contractor when it cleaned out and secured Bradley's home following the foreclosure.  As they see it, a principal who engages an independent contractor cannot be held liable for what the independent contractor does in fulfilling that engagement.

I reject this argument because it fundamentally confuses the concepts of direct and vicarious liability.[4]  Section 212 of

---

[4] To be fair, Bradley's brief opposing summary judgment suffers from the same confusion.  Accepting the false premise that

the Restatement (Second) of Agency[5] states, in relevant part:

> A person is subject to liability for the consequences of another's conduct <u>which results from his directions</u> as he would be for his own personal conduct if, with knowledge of the conditions, he intends the conduct, or if he intends its consequences . . . .

Restatement (Second) of Agency § 212 (emphasis added). Comment a to Section 212 explains:

> The rule stated in this Section is not dependent upon the law of agency but results from the general rule, stated in the Restatement of Torts, that <u>one causing and intending an act or result is as responsible as if he had personally performed the act or produced the result</u>. . . . If one intends a particular result to follow from his conduct and the result follows, it is immaterial that the particular way in which it is accomplished was unintended.

<u>Id.</u> § 212 cmt. a (emphasis added).

 The defendants concede that, "[o]n May 12, 2011, Legacy picked up a . . . work order <u>issued by Altisource</u> . . . for the 'initial services bundle'" for the property.  Doc. No. 106-1 at

---

vicarious liability is at issue here, Bradley argues that Wells Fargo is vicariously liable for Legacy's conduct for two dubious reasons: first, because it ratified Legacy's actions after the fact, and second, because it owed a non-delegable duty to Bradley under New Hampshire law.  Because I conclude that the record here would support a finding of direct liability against Wells Fargo, I need not address these arguments.

[5] New Hampshire follows the Restatement (Second) of Agency. <u>Cutter v. Town of Farmington</u>, 126 N.H. 836, 840 (1985).

7 (emphasis added).  The "initial services bundle," the defendants explain, included services for "securing" the property, which entailed "installing a combination lock on an exterior door and ensuring that other doors are locked."  Id. The bundle also included services to "clean[] out" the property.  Id.

It is undisputed, therefore, that Altisource itself – and, by extension, the defendants[6] - directed Legacy to perform "cleaning" and "securing" services at the property after the foreclosure.  A reasonable factfinder could conclude from this undisputed direction to Legacy that the defendants intended Legacy to both place a padlock on one of the home's exterior doors and dispose of any personal property that remained inside the home.  A reasonable factfinder, in other words, could conclude on this record that the defendants intended either the wrongful acts that Bradley alleges Legacy to have performed or the consequences that those alleged acts caused.  See Restatement (Second) of Agency § 212.  That finding would render the defendants directly, not vicariously, liable for Legacy's conduct regardless of whether they ever formed an agency

---

[6] See supra note 3.

relationship with Legacy. See id. § 212 cmt. a. Because the record would support this finding of direct liability, the doctrine of vicarious liability provides the defendants with no basis for summary judgment.

With the defendants' overarching vicarious liability argument rejected, I turn to their specific arguments for summary judgment on each of Bradley's three claims.

**B.    Wrongful Self-Help Eviction**

Bradley alleges that the defendants wrongfully used self-help to evict him from the property after the foreclosure sale. New Hampshire law considers a homeowner who remains in a home lost to foreclosure to be a tenant at sufferance, and the New Hampshire Supreme Court has held that "a purchaser at a foreclosure sale may not use self-help to evict a tenant at sufferance." Evans v. J Four Realty, LLC, 164 N.H. 570, 574, 576 (2013); see also Greelish v. Wood, 154 N.H. 521, 527 (2006). Instead, a foreclosure sale purchaser must employ the summary procedure prescribed by chapter 540 of the New Hampshire Revised Statutes to evict a tenant at sufferance from foreclosed property. See N.H. Rev. Stat. Ann. § 540:12 (providing for "purchaser [of property] at a mortgage foreclosure sale" to "recover possession" of property held by tenant at sufferance);

Evans, 164 N.H. at 576-77.

The defendants argue that they are entitled to summary judgment on Bradley's wrongful eviction claim for two reasons. First, through questionable synthesis of New Hampshire Supreme Court cases that address this cause of action, they argue that a wrongful eviction claim in the post-foreclosure context requires the purchaser to have "deprived [the tenant at sufferance] of access" to the property.[7] See Doc. No. 106-1 at 19.  The acts of placing an unlocked padlock on one of the home's doors and of removing chattels from the home into a dumpster, the defendants maintain, did not wholly deprive Bradley of access to the property because at least one door to the home remained unlocked, allowing Bradley to reenter the home even after Legacy's visit.

The New Hampshire Supreme Court's decision in Greelish v. Wood defeats this argument.  154 N.H. 521 (2006).  There, the record established that, after a foreclosure, the foreclosure

---

[7] The defendants additionally suggest that a claim for wrongful self-help eviction can also lie under New Hampshire law where a foreclosure purchaser "forcibly remove[s]" a tenant at sufferance from the property.  Doc. No. 106-1 at 19.  But because the record does not suggest that the defendants ever sought to forcibly remove Bradley from the property, I need not address this potential basis for liability here.

purchaser "park[ed] a truck across the driveway to block access to the premises," "park[ed] a vehicle within inches of the steps leading to the porch also to block access," and "remov[ed] without permission an unregistered vehicle that [the former homeowner] was storing on the property."  154 N.H. at 522. Beyond these acts, nothing in the decision suggests that the purchaser completely barred the tenant at sufferance from entering the home.  See id.  Based on these facts, the trial court below concluded that the purchaser had "engaged in a course of conduct designed to force [the former homeowner] to leave" the property and, consequently, found the purchaser liable for wrongful self-help eviction.  See id.  After holding that foreclosure purchasers may not use self-help to evict a tenant at sufferance, the New Hampshire Supreme Court upheld the trial court's award of damages against the purchaser.  See id. at 528.

Greelish make clear, therefore, that the critical question facing a factfinder in a wrongful post-foreclosure eviction claim is whether the purchaser's post-foreclosure conduct evinces a wrongful "course of conduct designed to force [the former homeowner] to leave" the property, not whether the purchaser completely barred the former homeowner from accessing

the property.  See Greelish, 154 N.H. at 522.  Here, as in Greelish, a reasonable factfinder could infer from Legacy's conduct – specifically, the installation of the padlock and the removal of personal chattels into a dumpster – that the defendants pursued such a course of conduct.  See id.  And, as in Greelish, a reasonable factfinder could reach that conclusion even if it remained technically possible for Bradley to reenter the home after Legacy's May 12 visit.  See id. (alleged wrongful acts of foreclosure purchaser did not include completely barring tenant at sufferance from property).  Any ability that Bradley had to reenter the home after May 2011, therefore, does not itself entitle the defendants to summary judgment as a matter of law.  If that were so, then a foreclosure purchaser could harass a tenant at sufferance with impunity as long as a single door into the foreclosed home remained unlocked.  Such a result would defy not only common sense, but also the policy favoring orderly and peaceful eviction that the New Hampshire Supreme Court endorsed in its decisions.  See Evans, 164 N.H. at 577; Greelish, 154 N.H. at 526.

   The defendants also argue that Bradley cannot bring a wrongful eviction claim because he was not in possession of the home, and therefore was not a tenant at sufferance, when the

disputed events took place.  But Bradley has identified sufficient facts of evidentiary quality to create a genuine dispute of material fact regarding his status as a tenant at sufferance during the relevant period.  Although Bradley did not spend every night at the home between January and May 2011, he testified that during this period, he both spent at least some nights there and visited the home on other occasions to retrieve his disc jockey equipment.  See Doc. No. 114-3 at 53-54 (Bradley Dep. 52:10 – 53:16).  Bradley's ex-wife also testified that the home remained his legal residence during this period and that he continued to receive mail there.  See Doc. No. 114-4 at 43 (Walker Dep. 42:6 – 10).  And, of course, Bradley testified that he kept his personal property inside the home.  See Doc. No. 114-3 at 117 (Bradley Dep. 116:13 – 15).  A reasonable factfinder could both credit Bradley's testimony and conclude that he was a tenant at sufferance when Legacy visited the home in May 2011.[8]  The defendants, therefore, are not entitled to summary judgment on Bradley's wrongful eviction claim.

---

[8] That Bradley did not return to the home after May 2011 does not resolve this genuine dispute of material fact.  There is evidence in the record suggesting that Bradley did not return to the home because he believed he had lost any legal right to do so.

**C.   Conversion**

Bradley's second claim alleges that the defendants are liable for conversion because Legacy removed some of his personal property stored inside the home and threw it into a dumpster outside the home.  The defendants argue for summary judgment on this claim for two reasons.  First, they contend that Bradley has no claim for conversion because "any exercise of dominion over [Bradley's] personal property . . . was appropriate and short-lived, and [the defendants] did not prohibit [Bradley] from exercising control over the personal property."  Doc. No. 106-1 at 21.  This argument misconstrues the legal standard for conversion.  In New Hampshire, "[a]n action for conversion is based on the defendant's exercise of dominion or control over goods which is inconsistent with the rights of the person entitled to immediate possession."  Rinden v. Hicks, 119 N.H. 811, 813 (1979).  Here, it is undisputed that a dumpster was placed on the property sometime in May 2011, and Bradley testified at his deposition that Legacy had removed at least some items from his daughter's bedroom into the dumpster when he visited the home on May 12, 2011.  See Doc. No. 114-3 at 120-21 (Bradley Dep. 119:14 – 120:5).  A reasonable factfinder could conclude that this removal of Bradley's personal items

14

into a dumpster was an unauthorized act of control over Bradley's property that interfered with Bradley's rights to that property.  See Rinden, 119 N.H. at 813.  Thus, although the defendants' contention that Legacy exercised only inconsequential control over Bradley's personal property may ultimately persuade a jury to find no liability on the conversion claim, it does not warrant summary judgment.

Second, the defendants argue that Bradley cannot establish conversion because he abandoned any personal property that remained at the home by failing to retrieve it after Legacy's May 12 visit.  It is true that, under New Hampshire law, abandonment is a complete defense to conversion.  Rinden, 119 N.H. at 814.  But in determining whether a claimant has abandoned allegedly converted property, "[t]he decisive test is whether the circumstances . . . are indicative of an intention to abandon" the property.  Lawlor v. Town of Salem, 116 N.H. 61, 63 (1976) (emphasis added).  Here, Bradley denies that he intended to abandon any of the personal property he kept inside the home, and so there is no direct evidence of abandonment.  The defendants point to circumstantial evidence in the summary judgment record that could permit a jury to infer such an intention.  Bradley, however, has pointed to other facts in the

record that weigh against that inference.  See Doc. No. 114-1 at 18.  In particular, he claims that he did not return to the home not because he intended to abandon his personal property, but because he thought that doing so would break the law.  See id. Therefore, a genuine dispute of material fact exists regarding whether Bradley intended to abandon any of the property that he alleges the defendants to have converted.  That genuine dispute precludes summary judgment for the defendants on the conversion claim.

### D. Intentional Infliction of Emotional Distress

Finally, Bradley claims that the defendants are liable to him for intentional infliction of emotional distress based on Legacy's actions at the property.  The defendants have already moved for summary judgment on Bradley's intentional infliction of emotional distress claim, and I have already denied their motion twice: in my March 3, 2014 summary judgment order, and again in my May 20, 2014 order addressing the defendants' motion for reconsideration of my March summary judgment order.  See Doc. Nos. 86 at 11-13, 99 at 6-7.  In my March 2014 summary judgment order, I expressly held that "[u]sing self-help to destroy someone's possessions without prior actual notice and despite the availability of legal alternatives could be viewed

as behavior utterly intolerable in a civilized society." Doc. No. 86 at 13. The defendants' present motion for summary judgment on the intentional infliction of emotional distress claim offers no new factual or legal arguments that might persuade me to change this position.

## IV.  CONCLUSION

Bradley's action against the defendants was removed to this Court in March 2012. See Doc. No. 1. Since then, both sides have expended significant time and resources to litigate what appears to be, at its core, a simple dispute in both fact and law. During this time, I have decided two dispositive motions – including my March 2014 order addressing the defendants' first motion for summary judgment – as well as a motion for reconsideration of that summary judgment decision. See Doc. Nos. 76, 86, 99. Undeterred, the defendants have now moved for summary judgment a second time, even reviving an argument identical to one that they raised, and I rejected, in their first motion for summary judgment. More recently, both sides appear to have raised needless discovery quarrels that do nothing to facilitate the "just, speedy, and inexpensive determination of [this] action," Fed. R. Civ. P. 1. See Doc.

Nos. 113, 153.

    The time has now come for this case to either settle or proceed to a jury trial.  The defendants' motion for summary judgment (Doc. No. 106) is denied.  A final pretrial conference in this case remains scheduled for Wednesday, September 23, 2015 at 2:00 pm, and this case remains docketed for the October 2015 trial period.  All other trial-related deadlines remain as scheduled on the June 2, 2015 trial notice posted on ECF.

    SO ORDERED.

    /s/Paul Barbadoro
    Paul Barbadoro
    United States District Judge

August 26, 2015

cc:   Kristina Cerniauskaite, Esq.
      Ruth A. Hall, Esq.
      Terrie L. Harman, Esq.
      Elizabeth M. Lacombe, Esq.
      Alexander D. Bono, Esq.